**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: ) | | |
| WARREN I. GREEN, ) | CHAPTER 7 | |
| ) | CASE NO. 13-10204-MSH | |
| Debtor. ) | | |
| ) | | |
| ) | | |
| JOHN O. DESMOND, CHAPTER 7 ) | ADVERSARY PROCEEDING | |
| TRUSTEE, ) | NO. 14-01026-MSH | |
| ) | | |
| Plaintiff, ) | | |
| v. ) | | |
| ) | | |
| MARSHA S. GREEN, ) | | |
| Defendant. ) | | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

The plaintiff, John O. Desmond, the duly appointed Chapter 7 Trustee of the bankruptcy estate of Warren I. Green (the "Plaintiff" or "Trustee"), hereby opposes Defendant Marsha S. Green's Motion for Summary Judgment. Contrary to the Defendant's assertion, the Trustee should be granted authorization to sell certain real estate known and numbered as 287 Langley Road, Unit 39, Newton Massachusetts (the "Langley Road Property"), held by the Defendant and Debtor as tenants by the entirety, pursuant to 11 U.S.C. § 363(h). In particular, the Trustee's ability to obtain authorization and power to sell property held as tenants by the entirety pursuant to 11 U.S.C. §§ 363(h)-(j) preempts M.G.L c. 209, § 1, which would otherwise directly conflict with the Trustee's power to marshal assets as provided by the Bankruptcy Code.

Even in the absence of clear federal preemption, because the Debtor and the Defendant maintain joint debts as evidenced, *inter alia*, by federal tax liens, the Trustee may terminate a tenancy by the entirety pursuant to the statutory language of M.G.L. c. 209, § 1 which allows for

the seizure and execution of property held as tenants by the entirety in the context of joint debts. Furthermore, as provided by M.G.L. c. 209, §1, the Debtor has incurred debts on account of necessaries furnished to the Defendant as evidenced by proofs of claims filed in the Debtor's bankruptcy case and according to findings made by the Superior Court which determined that most if not all of the costs associated with the Langley Road Property were paid from the Debtor's funds.

As a result, the Trustee may seek authorization to sell the Langley Road Property pursuant to Section 363(h) of the Bankruptcy Code. With respect to Section 363(h), the Defendant has conceded that: (1) that partition of the Langley Road Property, as a single family residential home, is impracticable; (2) as a result of the Defendant maintaining an interest and living in the Langley Road Property, the sale of the Langley Road Property free and clear of her interest will generate a higher return for the estate; and (3) that the Langley Road Property is not used in connection with the production, transmission, or distribution of power. Therefore, the only issue remaining with regard to the Trustee's burden under Section 363(h) is whether the benefit to the estate of the sale of the Langley Road Property outweighs any detriment to the Defendant. Notwithstanding the fact that the Defendant has not put forth any material facts concerning any actual detriment to the Defendant if the Court did grant the Trustee authorization to sell the Langley Road Property, the Trustee has established that the benefit to the estate would outweigh any detriment to the Defendant. Based on an appraisal conducted on April 16, 2018, the fair market value of the Langley Road Property is $1,200,000. Sale of the Langley Road Property, the only currently available non-exempt asset in the Debtor's bankruptcy estate, at this value would result in approximately $315,000 in proceeds to both the bankruptcy estate and the

Defendant. The Trustee, therefore, respectfully requests that the Court deny the Defendant's Motion for Summary Judgment.

    **I.    SECTION 363(h) OF THE BANKRUPTCY CODE PREEMPTS M.G.L. C. 209, § 1 AND ALLOWS THE TRUSTEE TO TERMINATE THE TENANCY**

Section 363(h) of the Bankruptcy Code, which grants the Trustee power to seek authorization to sell property held as tenants by the entirety where the co-owner spouse is a non-debtor, preempts Massachusetts law concerning entireties property that directly conflicts with the Trustee's duty and power to marshal assets as provided by the Bankruptcy Code. It is well settled that "in a Chapter 7 case, the appointed trustee steps into the debtor's shoes, taking control of the debtor's assets and seeing that every effort is made to enhance the estate for full distribution to the creditors." In re Ciavarella, 28 B.R. 823, 825 (Bankr. S.D.N.Y. 1983); see also 11 U.S.C § 704(a). It is also well-settled that a debtor's bankruptcy estate includes nonexempt property held in tenancies by the entirety. See e.g. Edmonston v. Murphy, 107 F.3d 74, 75 (1st Cir. 1997) (where court determined that entireties property not subject to exemption was property of the estate subject to the trustee's duty to collect assets for the benefit of creditors).

While it is true that "[p]roperty interests are created and defined by state law" it is also true that when federal law "requires a different result," the Bankruptcy Code preempts state law. See Butner v. U.S., 440 U.S. 48, 55 (1979). Here, M.G.L. c. 209, § 1 is in direct conflict with Section 363(h) as M.G.L. c. 209, § 1 provides, in relevant part:

> The interest of a debtor spouse in property held as tenants by the entirety shall not be subject to seizure or execution by a creditor of such debtor spouse so long as such property is the principal residence of the nondebtor spouse; provided, however, both spouses shall be liable jointly or severally for debts incurred on account of necessaries furnished to either spouse or to a member of their family.

3

By prohibiting a creditor to levy and sell property held as tenants by the entirety in order to satisfy outstanding debt of one spouse, M.G.L. c. 209, §1, directly conflicts with the power granted to a chapter 7 trustee to sell the non-debtor spouse's interest in property held as tenants by the entirety pursuant to Section 363(h) and to distribute the proceeds of such sale in accordance with the procedures set forth in Sections 363(j) of the Bankruptcy Code.

As articulated in Whitman v. Lassman, No. CIV.A.06 11780 GAO, 2007 WL 2259108, at *1 (D. Mass. Aug. 1, 2007), in which the District Court affirmed the Bankruptcy Court's denial of a defendant's motion to dismiss an adversary complaint through which the trustee sought authorization to sell property held as tenants by the entirety, Section 363(h) of the Bankruptcy Code preempts M.G.L. c. 209, § 1. As the Whitman Court stated, "§ 363(h), which expressly authorizes the sale of property held by the entirety, trumps the state statute that would forbid such a sale." Whitman, 2007 WL 2259108, at *1. In so holding the court stated, "Section 363(h) authorizes the trustee to sell property held by a debtor with his spouse as tenants by the entirety, and § 363(j) authorizes him then to distribute the proceeds of that sale, as the interests of the parties may appear." Id. at 1. The Whitman Court's holding comports with the longstanding notion that state laws which "interfere with, or are contrary to the laws of Congress" are preempted and invalid. See Greenwood Trust Co. v. Commonwealth, 971 F.2d 818, 822 (1st Cir. 1992); see also In re Weinstein, 164 F.3d 677, 681 (1st Cir. 1999) (First Circuit determined that Massachusetts homestead law was preempted by Section 522 where Massachusetts law allowed for more expansive limitation of debts for which exempt property remained liable).

In rejecting the defendant's contention in Whitman that M.G.L. c. 209, § 1 prevented the immediate distribution of funds from any sale, and therefore prevented the trustee from selling

4

the property held as tenants by the entirety, the court stated, "[the defendant's] proposed construction of § 363(j) would require, in some instances, the trustee to hold such proceeds for years before the tenancy would terminate in accordance with state property law . . . that would present an enormous interference with the administration of any affected estate . . . it would be counter to the requirement of the Bankruptcy Code that estates be administered as expeditiously as possible." Whitman, 2007 WL 2259108, at *2. In fact, "[n]owhere in § 363(h) is there any requirement that the sale of the co-owned property be authorized under applicable non-bankruptcy law." In re Shaw, No. 09-219, 2010 WL 128383, at *6 (Bankr. N.D.W. Va. Jan. 11, 2010). The notion that state law may control where the Bankruptcy Code specifically provides otherwise in the context of the sale of property held as tenants by the entirety has also been rejected in other jurisdictions. See e.g. In re Hidler, 192 B.R. 790, 795 (Bankr. D.Me. 1996) ("Under § 363(h), the trustee may sell entireties property without the consent of the nondebtor spouse, regardless of state law [requiring a spouse's consent to a sale]."); In re Lang, 191 B.R. 268, 273 (Bankr. D.P.R. 1995) ("[T]he court finds that the requirement of the non-debtor spouse's consent prior to the disposition of community property where the other files a bankruptcy petition is preempted as it is contrary to federal bankruptcy law.").

The Whitman Court's conclusion also comports with the legislative history underpinning Section 363(h). With respect to Section 363(h), Congress specifically contemplated the sale of property held as tenants by the entirety. According to the legislative history accompanying Section 363:

> With respect to other co-ownership interest, such as **tenancies by the entirety. . . The bill does not invalidate the rights, but provides a method by which the estate may realize on the value of the debtor's interest in the property** while protecting the other rights.

5

H.R. REP. 95-595, 177, 1978 U.S.C.C.A.N. 5963, 6137-38 (internal footnotes omitted) (emphasis added).  Accordingly, the drafters intended for Section 363 to authorize a trustee to sell property for the benefit of the estate even in situations involving entireties property and the rights of non-debtor spouses.  The legislative history further provides:

> The trustee is permitted to realize on the value of the property by being permitted to sell it without obtaining the consent or a waiver of rights by the spouse of the debtor or the co-owner, as may be required for a complete sale under applicable state law. **The other interest is protected under H.R. 8200 by giving the spouse a right of first refusal at a sale of the property, and by requiring the trustee to pay over to the spouse the value of the spouse's interest in the property if the trustee sells the property to someone other than the spouse**.

Id. (emphasis added).  Not only did Congress contemplate sales of property held as entireties, but also specifically determined that provisions of § 363 (i.e. Section 363(i)-(j)) are intended to protect the non-debtor spouse's interest in the property.

Here, if the Court grants the Trustee authorization to sell the Langley Road Property pursuant to Section 363(h), the Trustee must distribute proceeds from the sale of the Langley Road Property pursuant to Section 363(j).  According to Section 363(j):

> [a]fter a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

The Defendant's interest in the Langley Road Property is preserved through the distribution of sale proceeds.  Furthermore, according to Section 363(i), "[b]efore the consummation of a sale of property to which section (g) or (h) applies . . . the debtor's spouse . . . may purchase such property at the price at which such sale is to be consummated."  Thus, the Defendant is provided with a right of first refusal to purchase the Langley Road Property or the ability to receive a

6

distribution of funds in accordance with Section 363(j) upon a sale authorized pursuant to Section 363(h).

Contrary to the Defendant's contention, the present situation is also entirely distinguishable from In re Snyder, 249 B.R. 40 (B.A.P. 1st Cir. 2000), aff'd, 2 F. App'x 46 (1st Cir. 2001). In Snyder, the Bankruptcy Appellate Panel considered the effect of the Bankruptcy Code on entireties property in the context of a debtor's ability to avoid a lien pursuant to Section 522(f). In fact, the Snyder Court did not address Section 363 at all in its decision. Instead, the Snyder Court determined that a debtor's interest in property held as tenants by the entirety for purposes of lien avoidance should be valued at 100 percent and fixed in time. Id. at 46. Here, the issue before this Court does not concern lien avoidance under Section 522(f), but rather authorization to sell the Langley Road Property pursuant to Section 363(h). Unlike, Section 522(f) which concerns a *debtor's ability* to exempt certain property, Section 363(h) concerns a *trustee's ability* to sell property held in common with a non-debtor.[1]

## II. THE EXISTENCE OF JOINT DEBTS OF THE DEBTOR AND THE DEFENDANT PROVIDES THE TRUSTEE A SEPARATE AND INDEPENDENT BASIS TO SELL THE ENTIRETIES PROPERTY

Alternatively, the statutory protection against seizure or execution under M.G.L. c. 209, § 1 does not apply where joint debts are incurred by both spouses, as is the case here. As the court stated in In re McConchie in determining that a debtor's tenancy by the entirety interest was not entirely exempt from attachment, "[tenancy by the entirety property] is free from levy and execution from the creditor of one spouse **if the debts are not joint or for necessaries**." 94 B.R. 245, 247 (Bank. D. Mass. 1988) (emphasis added); see also Lavien, H. and Mencher, J.,

---

[1] Unlike the Debtor in Snyder, the Debtor here is not entitled to a homestead exemption. The Debtor disclaimed any interest in the Langley Road Property at the time of his bankruptcy filing. Only after the Trustee was successful in state court in imposing a resulting trust on the Debtor's interest in the Langley Road Property did the Debtor attempt to claim a homestead exemption. [SMF ¶¶ 12-15]. That attempt was rejected by this Court pursuant to Section 522(g). [SMF ¶ 14].

7

The Eclipse of Massachusetts Tenancy by the Entirety and Reappraisal of Homestead as they Relate to Bankruptcy, 67 Mass. L. Rev. 170 (1982) ("Any debt for a necessary outstanding on the day the bankruptcy petition is filed will create a joint debt. Even if only one spouse files, the joint debt will permit the trustee to reach the property."). Furthermore, as provided in Snyder, "regardless of whether either spouse continues to occupy the property as the principal residence, the property can be sold in satisfaction of a judicial lien securing an obligation of both parties . . . because the obligation being satisfied is one of both spouses, the creditor can reach the interests of both spouses in the property." Snyder, 249 B.R. at 45 citing In re Snyder, 231 B.R. 437 (Bank. D. Mass. 1999).

Here, it is undisputed that there are recorded federal tax liens that encumber the interests of both the Debtor and the Defendant (the "Joint IRS Liens") in the Langley Road Property.[2] [Statement of Undisputed Material Facts ("SMF") ¶ 10]. Specifically, the Joint IRS Liens, with the corresponding recording information from the Middlesex South Registry of Deeds (the "Registry"), are as follows:

| Date | Book/Page | Tax Period | Amount |
|---|---|---|---|
| 12/9/14 | 64626-214 | 2011/2012 | $15,767.42 |
| 01/26/15 | 64836-154 | 2013 | $8,226.76 |
| 07/22/15 | 65769-214 | 2014 | $11,384.78 |
| 03/23/17 | 69041-370 | 2015 | $5.403.43 |
| | | **TOTAL** | **$40,782.39** |

---

[2] There is one federal tax lien recorded on December 9, 2014 against the Debtor only at the Registry in the amount of $86,299.52 [Book 64626, Page 215]. This relates to a tax liability incurred in 2010, a year in which the Debtor and the Defendant did not file joint tax returns. The Trustee maintains that this lien should be treated as an unsecured claim.

8

Id. The existence of the Joint IRS Liens eliminate the non-debtor spouse protection contained in M.G.L. c. 209, § 1 and enable the Trustee to reach the Langley Road Property. Thus, even assuming *arguendo* that the concept of federal preemption did not apply, the Langley Road Property may be sold pursuant to Section 363(h)-(j) for the benefit of the creditors of the Debtor's estate on account of the existence of the Joint IRS Liens.

### III. THE DEBTOR'S PAYMENT OF "NECESSARIES" AS EVIDENCED BY PROOFS OF CLAIM AND FOUND BY THE SUPERIOR COURT AS WELL AS SUBSTANTIAL TAX LIABILITY PROVIDES THE TRUSTEE A SEPARATE AND INDEPENDENT BASIS TO SELL THE ENTIRETIES PROPERTY

Moreover, as provided in M.G.L. c. 209, § 1, "spouses shall be liable jointly or severally for debts incurred on account of **necessaries** furnished to either spouse or to a member of their family." (emphasis added). "The term 'necessaries' . . . is not confined to articles of food or clothing required to sustain life, but has a much broader meaning and includes such articles for use by a wife as are suitable to maintain her according to the property and condition in life of her husband." Pioneer Valley Postal Fed. Credit Union v. Soja, 2002 Mass. App. Div. 193 (Dist. Ct. 2002) citing Jordan Marsh Co. v. Cohen, 242 Mass. 245, 249, 136 N.E. 350 (1922). Here, according to the Debtor's Claims Register, Capital One Bank, N.A, American Express, and Verizon have all filed proofs of claim against the Debtor's estate totaling approximately $4,700 which presumably evidences the payment of necessaries by the Debtor.[3] [SMF ¶ 21]. Further, as found by the Superior Court, the Debtor did not only make mortgage and home equity loan payments in connection with the Langley Road Property, but he also paid " most if not all of the expenses associated with the Condominium including property taxes, the Condominium association fees, and utilities . . . ." [SMF ¶ 22]. The Superior Court specifically found that the

---

[3] The total claims filed against the Debtor as referenced in the claims register total $88,482.58. In addition, the IRS has asserted claims in excess of $127,000 for which they have recorded liens against the Langley Road Property but have not yet filed proofs of claim.

9

Debtor's income between 2007 and 2012 exceeded his wife's income by nearly $550,000. [SMF ¶ 23]. Putting aside the Joint IRS Liens, the underlying tax liability relates in some part to income that was utilized toward the Langley Road Property, living expenses or some other necessaries.[4] Accordingly, the outstanding indebtedness related to "necessaries" provides a separate basis that allows the Trustee to sell the Langley Road Property and distribute the proceeds from the sale for the benefit of creditors.

## IV. THE DEFENDANT HAS NOT ESTABLISHED A DETRIMENT WHICH OUTWEIGHS THE BENEFIT TO THE ESTATE FROM THE SALE OF THE PROPERTY

As noted above, the Defendant has conceded that the Trustee has satisfied Section 363(h)(1), (2), and (4). [SMF ¶¶ 23-25]. Therefore, the only element at issue is Section 363(h)(3)—whether "the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners." Here, the estate will receive significant equity from the sale of the Langley Road Property which outweighs any detriment to the Defendant. Courts have interpreted the burden under 363(h)(3) as a shifting burden:

> Although the Plaintiff bears the ultimate burden of proof on this issue, the Plaintiff's initial burden is only to show that sale of the property free of the Defendant's interest would produce a benefit to the estate: that the estate's share of the net proceeds would exceed existing liens on the Debtor's interest in the property. If the Defendant then shows that such a sale would produce a detriment to him, the Trustee must show that the benefit to the estate is greater than the detriment to the Defendant.

In re Duda, 422 B.R. 339, 349 (Bankr. D. Mass. 2010) (quoting Gray v. Burke (In re Coletta Bros. of N. Quincy, Inc.), 172 B.R. 159, 165 (Bankr. D. Mass. 1994)). According to an appraisal

---

[4] In addition to the Joint IRS Liens totaling $40,782.39, as noted previously there is tax liability owing from the Debtor from 2010 which the IRS has asserted to be $86,299.52. [SMF ¶ 10]. As found by the Superior Court, the Debtor's income was paying the lion's share of the household expenses. [SMF ¶ 22]. To this end, the Superior Court rejected the notion that the Defendant was establishing her financial independence by purchasing the Langley Road Property.

performed for the Trustee on April 16, 2018, the fair market value of the Langley Road Property as of that date is $1,200,000. [SMF ¶ 18]. As set forth in the chart below, after deducting the estimated costs of sale, payment of the first and second mortgages and satisfaction of the Joint IRS Liens, the sale of the Langley Road Property will return approximately $315,000 to the Debtor's bankruptcy estate:

| CASH FLOW FROM SALE OF LANGLEY ROAD PROPERTY | | |
|---|---|---|
| Curley Appraisal | $1,200,000.00 | |
| *Approx. Broker Fee* | -$60,000.00 | |
| Equity Remaining (1) | $1,140,000.00 | |
| *1st Mortgage* | -$419,920.00 | |
| Equity Remaining (2) | $720,080.00 | |
| *2nd Mortgage* | -$47,592.00 | |
| Equity Remaining (3) | $672,488.00 | |
| *Joint IRS Liens* | -$40,782.39 | |
| Equity Remaining (4) | $631,705.61 | |
| | | |
| **Equity Division** | **Defendant** | **Estate** |
| | $315,852.81 | $315,852.81 |

[SMF ¶¶ 27-30].

The benefit to the bankruptcy estate is significant as the Langley Road Property is the only asset of the bankruptcy estate currently available for liquidation and distribution to creditors and sale of the Debtor's interest along with the Defendant's interest will result in substantially more proceeds for the estate and its creditors. See In re Vassilowitch, 72 B.R. 808, 807 (Bankr. D. Mass. 1987). "It is a benefit to the estate to pay secured creditors, administrative and priority unsecured claims from the proceeds of a sale of property pursuant to § 363(h) of the Code." In re Roswick, 231 B.R. 843, 860 (Bankr. S.D.N.Y. 1999). Here, the Joint IRS Liens for income taxes dating back to 2011 and the first and second mortgages will be paid in full. After payment of all of these debts there will still be approximately $315,000 for the estate and the same amount

11

for the Defendant. [SMF ¶ 30]. Accordingly, the Trustee has satisfied his initial burden of proof.

The Defendant cannot satisfy her burden that the detriment to her outweighs the benefit to the estate. In fact, the Defendant has not set forth any material facts in connection with her Motion for Summary Judgment concerning any detriment under Section 363(h)(3). Instead, the Defendant appears to incorrectly rely on the notion that the Trustee may not defease the Defendant of her interest in the property. As articulated above, the Trustee may sell property held as tenants by the entirety on three separate and independent grounds: (1) Section 363(h) preempts M.G.L. c. 209, § 1; (2) the existence of the Joint IRS Liens which removes the Langley Road Property from the protection afforded by M.G.L. c. 209, §1; and (3) the Debtor's payment of necessaries for the Defendant which resulted in outstanding indebtedness as of the Petition Date takes the Langley Road Property outside the protection of M.G.L. c. 209, § 1. Therefore, the Defendant has not demonstrated that the benefit to the estate in the form of proceeds in the amount of at least $315,000 will not outweigh the detriment to the Defendant of having her interest in the property held as tenant by the entirety terminated. The Defendant will receive 50% of the net proceeds from the sale of the Langley Road Property which is estimated to be $315,000 based on the Trustee's current appraisal, which proceeds the Defendant could use toward the purchase of a new residence. [SMF ¶¶ 30-31]. In 2006, the Defendant purchased the Langley Road Property with a $480,000 down payment and $420,000 in mortgage financing without her husband co-signing the loan. [SMF ¶ 16]. Presumably, the Defendant can work out a similar arrangement where the amount of the mortgage financing is comparable to the down payment.

In any event, the Defendant has not presented any facts demonstrating that she would not be able to secure another residence. Rather, the Defendant has merely alleged in a rather conclusory fashion that she has "uncertain prospects of acquiring a new home." Memorandum in Support of Summary Judgment at 7. This factual allegation is too vague and speculative to support Defendant's purported detriment. As a result, the Trustee has satisfied his burden under Section 363(h)(3) and Defendant's Motion for Summary Judgment must be denied.[5]

## CONCLUSION

The Trustee's ability to obtain authorization and power to sell property held as tenants by the entirety pursuant to 11 U.S.C. §§ 363(h)-(j) preempts M.G.L. c. 209, § 1, which would otherwise directly conflict with the Trustee's power to sell the non-debtor spouse's interest in the Langley Road Property. To hold otherwise would frustrate the purpose of the Bankruptcy Code to provide for the marshaling and liquidation of the Debtor's assets for the benefit of creditors and the efficient administration of bankruptcy estates. Even if this Court were to find that Section 363(h)-(j) does not preempt Massachusetts law, the clear language of M.G.L. c. 209, § 1 indicates that the existence of joint debt, as is the case here with the Joint IRS Liens, allows for the Trustee to seize and execute on property held as tenants by the entirety in order to satisfy outstanding debt owed to a creditor of both spouses. Furthermore, it is apparent that several aspects of the Debtor's outstanding indebtedness as of the Petition Date relate to the payment of necessaries which would also take the property outside the protection of the Massachusetts tenancy by the entirety statute. The only contested element of Section 363(h) is whether the benefit to the Debtor's bankruptcy estate outweighs the detriment to the Defendant. For the

---

[5] Based on this summary judgment record, the Trustee would be entitled to summary judgment in his favor on Count II of the Adversary Complaint. However, the Trustee presumes that if he were to file a cross motion for summary judgment, the Defendant would raise the recently added detriment related to her multiple sclerosis ("MS") in opposition and that the Court would determine that there are disputed issues of material fact as to whether her MS poses a detriment that outweighs the benefit to the estate.

13

reasons set forth above, the Trustee has satisfied his burden in establishing the benefit to the estate in form of approximately $315,000 in excess proceeds from the sale. On the other hand, the Defendant has submitted no competent evidence as to any detriment suffered by the Defendant. Therefore, the Defendant's Motion for Summary Judgment should be denied.

        Respectfully submitted,

        **JOHN O. DESMOND, CHAPTER 7 TRUSTEE OF THE ESTATE OF WARREN I. GREEN**

        By his attorneys,

        */s/ Anthony R. Leone*
        Thomas S. Vangel – BBO #552386
        Anthony R. Leone - BBO #681760
        Murtha Cullina LLP
        99 High Street
        Boston, MA 02110-2320
        Telephone:  617.457.4000
        Facsimile:  617.482.3868
        tvangel@murthalaw.com
        aleone@murthalaw.com

Dated:  April 30, 2018

## **CERTIFICATE OF SERVICE**

      I, Anthony R. Leone, hereby certify that this document was filed through the Court's ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<em>/s/ Anthony R. Leone</em>