**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>WARREN I. GREEN,<br><br>   Debtor<br><br>―――――――――<br><br>JOHN O. DESMOND, CHAPTER 7 TRUSTEE,<br><br>   Plaintiff<br><br>v.<br><br>MARSHA S. GREEN,<br><br>   Defendant | Chapter 7<br>Case No. 13-10204-MSH<br><br><br><br><br>Adversary Proceeding<br>No. 14-1026 |

**MEMORANDUM OF DECISION AND ORDER**
**ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In the one remaining count of Mr. Desmond's two-count complaint against Ms. Green in this adversary proceeding,[1] Mr. Desmond seeks judgment under Bankruptcy Code § 363(h)[2] permitting him to sell a condominium in Newton, Massachusetts owned as tenants by the entirety by Ms. Green, who is not a debtor in a bankruptcy case, and her husband, Warren Green, the debtor in the main case. Ms. Green has filed a motion for summary judgment as to this remaining count. For the reasons explained below, I will deny Ms. Green's motion and allow this matter to proceed to trial.

---

[1] The other count was dismissed by agreement.
[2] All references to the Bankruptcy Code or the Code are to 11 U.S.C. § 101 *et seq*.

1

**Statutory and Legal Framework**

Before delving into the merits of the parties' dispute, I preview the relevant statutes and legal standards, which will inform my analysis. Bankruptcy Code § 363(h) authorizes a trustee to sell property owned by a debtor and non-debtor as tenants in common, joint tenants, or tenants by the entirety. Section 363(h) provides:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
> (1) Partition in kind of such property among the estate and such co-owners is impracticable;
> (2) Sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interest of such co-owner;
> (3) The benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
> (4) Such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

To proceed with a sale under 363(h), the trustee must file an adversary proceeding in which it is his burden to establish the four elements of 363(h). *See* Fed. R. Bankr. P. 7001(3) (providing that "a proceeding to obtain approval under § 363(h) for the sale of both the interest of the estate and of a co-owner in property" is an adversary proceeding); *see also In re Duda*, 422 B.R. 339, 348 (Bankr. D. Mass. 2010) ("The Trustee has the burden of establishing all four elements required under § 363(h)."). Under § 363(h)(3), the court must perform a balancing test to determine if the proposed sale will confer upon the estate a benefit that outweighs any detriment to the non-debtor co-owner. *In re Persky*, 893 F.2d 15, 18 (2d Cir. 1989); *In re Coletta Bros. of N. Quincy, Inc.*, 172 B.R. 159, 164 (Bankr. D. Mass. 1994).

Assuming the trustee carries the day and sells the property, § 363(j) requires the trustee to distribute the proceeds of the sale according to the interests of each co-owner. Section 363(j) provides:

> After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

11 U.S.C. § 363(j).

The concept of tenancy by the entirety ownership derives from the common law and is a form of ownership that can exist only between co-owners who are spouses. *See Coraccio v. Lowell Five Cents Savings Bank*, 612 N.E.2d 650, 652 (Mass. 1993). In Massachusetts, tenancy by the entirety ownership is governed by statute. *See, e.g.*, Mass. Gen. Laws ch. 184, § 7 (2018) ("A devise of land to a person and his spouse shall, if the instrument creating the devise expressly so states, vest in the devisees a tenancy by the entirety."); *see also* Mass. Gen. Laws ch. 184 § 8. Mass. Gen. Laws ch. 209, § 1 provides, in relevant part, that "the interest of a debtor spouse in property held as tenants by the entirety shall not be subject to seizure or execution by a creditor of such debtor spouse so long as such property is the principal residence of the nondebtor spouse." Mass. Gen. Laws ch. 209, § 1.

The spouses hold the property "not as 'two tenants by the entirety,' but as one person, in one tenancy." *Snyder v. Rockland Trust Co. (In re Snyder)*, 249 B.R. 40, 44 (B.A.P. 1st Cir. 2000). When property held by the entirety in Massachusetts is sold, the proceeds become personal property held by the entirety. *Smith v. Tipping*, 211 N.E.2d 231, 232 (Mass. 1965). Massachusetts courts have held that tenancies by the entirety can be terminated only upon death, divorce or voluntary deed of both tenants. *Snyder*, 249 B.R. at 44.

**The Dispute**

Ms. Green maintains that based on the undisputed facts she is entitled to summary judgment in her favor as a matter of law. While she concedes that Mr. Desmond has satisfied the first two requirements of 363(h) and that the fourth requirement does not apply to the property in this case, she claims Mr. Desmond cannot satisfy the third requirement, that "the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners." 11 U.S.C. §363(h)(3).

 Ms. Green argues that Mr. Desmond cannot satisfy this third requirement because, among other things, Mr. Desmond cannot present a formula for the division of the proceeds of a sale and a payment to her as required by § 363(j) that is consistent with her property rights under Massachusetts tenancy by the entirety law. Ms. Green asserts that, because she and Mr. Green own the property as tenants by the entirety, the trustee would have to hold any proceeds of its sale in such ownership until the termination of the tenancy. She contends that because each owner enjoys equal right to the entire ownership interest in such property and its proceeds, any formula which gives the co-owners less than their full interest in the whole fails to satisfy § 363(j). She concludes that Massachusetts tenancy by the entirety law prohibits Mr. Desmond from distributing the proceeds of the sale of the property as required by § 363(j), which means that neither she nor the bankruptcy estate will receive anything from the sale during the existence of the tenancy, and this prevents Mr. Desmond from satisfying the balancing test of § 363(h)(3). In support of her position, she relies heavily on *In re Coombs*, 86 B.R. 314 (Bankr. D. Mass. 1988).

Mr. Desmond disagrees, urging me to follow *Whitman v. Lassman*, No. CIV.A.06 11780 GAO, 2007 WL 2259108 (D. Mass. Aug. 1, 2007). In *Whitman*, the United States District Court

for the District of Massachusetts affirmed the bankruptcy court's denial of a motion to dismiss a § 363(h) complaint. While the *Whitman* Court, like the *Coombs* Court, considered the effects of Massachusetts tenancy by the entirety law on § 363(h), the court in *Whitman* concluded that they were irrelevant because § 363(h) "trumps the state statute that would forbid such a sale." *Whitman*, 2007 WL 2259108 at *1.

## The Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56, made applicable hereto by Fed. R. Bankr. P. 7056. A genuine issue is "one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve [the issue] in favor of the nonmoving party." *In re McCarthy*, 473 B.R. 485, 491 (Bankr. D. Mass. 2012) (quoting *Triangle Trading Co. v. Robroy Indus.,* 200 F.3d 1, 2 (1st Cir. 1999)). A material fact is one that might affect the outcome of the case under the governing law. *See id.* at 491.

The moving party in a summary judgment motion bears the initial burden of demonstrating that no genuine issue of material fact exists by pointing to materials of evidentiary quality such as affidavits or depositions that are so one-sided as to warrant judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *In re Varrasso*, 37 F.3d 760, 763 (1st Cir. 1994). "Only if the record, viewed in that manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997). Here, the material facts are not in dispute, but rather the parties disagree on the law that governs the legal consequences flowing from those facts.

5

### *Coombs* and *Whitman*

In *Coombs*, the trustee filed a § 363(h) complaint against Ms. Coombs, the non-debtor, seeking to sell the home she owned with her husband, the debtor, as tenants by the entirety. *Coombs*, 314 B.R. at 314. Ms. Coombs opposed the sale, claiming the trustee could not meet the prerequisites of § 363(h). *Id.* at 315. After a thorough survey of Massachusetts law governing tenancies by the entirety, the court concluded that the trustee would have to hold the proceeds of the trustee's sale of the marital home in tenancy by the entirety ownership during the joint lives of the Coombs. *Id.* at 317. The court found that a sale would thus confer, at best, a minimal benefit on the bankruptcy estate while severely prejudicing Ms. Coombs. It found that not only would her share of the sale proceeds be tied up in the entireties ownership for an extended period, but forcing Ms. Coombs to move after a sale would also cause her psychological and physical harm. *Id.* at 318. Weighing all of these factors against the fact that Mr. Coombs had offered to pay the trustee $20,000 to buy back his interest in the home, the court concluded that the trustee could not meet the § 363(h) requirements for a sale of the entireties property, and he dismissed the trustee's complaint. *Id.*

*Whitman*, too, involved a non-debtor spouse, Ms. Whitman, who opposed a trustee's attempted § 363(h) sale. *Whitman*, No. CIV.A.06 11780 GAO, 2007 WL 2259108 at *1. Unlike Ms. Coombs, however, Ms. Whitman did not claim psychological or physical harm. *Id.* Also, Ms. Whitman's husband, unlike Ms. Coomb's husband, had not offered to purchase his interest from the trustee.[3] *Id.* Nevertheless, Ms. Whitman raised the *Coombs*-like legal argument that because under Massachusetts law the proceeds of the trustee's § 363(h) sale would become

---

[3] The specific facts in *Coombs* played a critical role in the court's decision to dismiss the trustee's complaint. As in *Whitman*, the record before me does not establish facts similar to those presented in *Coombs*.

entireties property which the trustee could not distribute during the existence of the entireties estate, the trustee could not satisfy the Bankruptcy Code requirments for a sale. *Id.* at *2. The bankruptcy court denied Ms. Whitman's motion to dismiss the trustee's § 363(h) complaint, and she appealed to the district court. *Id.* at *1. In affirming, the district court acknowledged the apparent application of Massachusetts tenancy by the entirety law to the sale proceeds as argued by Ms. Whitman and then turned the argument against her. *Id.* at *2. The court noted that construing § 363(h) and (j) as subject to "the state rule that keeps the proceeds indivisible" until the tenancy is terminated "would require, in some instances, the trustee to hold such proceeds for years before the tenancy would terminate in accordance with state property law." *Id.* at *2. This, the court concluded, would be impractical and run counter to the "requirement of the Bankruptcy Code that estates be administered as expeditiously as possible." *Id*. The district court read § 363(j) to require "prompt distribution" of the proceeds and found that because Massachusetts law interfered with this objective, § 363(j) preempted Massachusetts law to the extent that Massachusetts law would interfere with this goal. *Id*.

## Preemption of Massachusetts Tenancy by the Entirety Law

The United States Court of Appeals for the First Circuit has identified three circumstances in which a federal statute or regulation will be deemed to preempt state law. The first is when the federal statute is expressly preemptive. *Tart v. Massachusetts*, 949 F.2d 490, 500 (1st Cir. 1991). The second is when a federal regulatory scheme "is so pervasive as to generate the reasonable inference that Congress intended to leave no domain open to state regulatory supplementation." *Id.* And the third is when a state statute is in direct conflict with a federal statute, thereby frustrating Congressional intent or making compliance with both statutes impossible. *Id*. The first example of preemption is known as express preemption, and the second

and third are examples of implied preemption. *See, e.g.*, *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992).

Bankruptcy Code § 363(h)-(j) does not expressly preempt state law, so any analysis of preemption here must focus on the implied variety. Implied preemption occurs when (1) Congress implements a scheme "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," (2) when an act of Congress concerns an area where the federal interest is so dominant as to preclude enforcement of state laws, or (3) when the goals of the federal law manifest a purpose to override state law. *Greenwood Tr. Co. v. Massachusetts*, 971 F.2d 818, 822-23 (1st Cir. 1992) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Additionally, where federal and state law are in direct conflict or when state law is an obstacle to the application of federal law, a finding of preemption would be appropriate. *Id.* (citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

An intent to preempt state law is presumed when federal regulation is comprehensive. *Hillsborough Cty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. at 230). Courts have described the Bankruptcy Code as "complex, detailed, and comprehensive," thus supporting the presumption that Congress intended "to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike." *See MSR Expl. v. Meridian Oil, Inc.*, 74 F.3d 910, 913 (9th Cir. 1996). "It is very unlikely that Congress intended to permit the superimposition of state remedies on the many activities that might be undertaken in the management of the bankruptcy process." *Id.* Additionally, if state law has the consequence, even if unintended, of materially frustrating a debtor's use of the Bankruptcy Code, then the state law will be preempted. *Volkswagen of Am. v. Dan Hixon Chevrolet Co. (In re Dan Hixson Chevrolet*

8

*Co.)*, 12 B.R. 917, 923 (Bankr. N.D. Tex. 1981) (noting that the state legislature's lack of intent to frustrate federal law does not defeat preemption of state law); *cf. Mass. Ass'n of Health Maint. Org. v. Ruthardt*, 194 F.3d 176, 179 (1st Cir. 1999) (noting that "congressional intent also can be deduced from circumstances such as inconsistency or impossibility").

Notwithstanding the comprehensive nature of the Bankruptcy Code in general and of § 363 in particular, Ms. Green invokes the United States Supreme Court's ruling in *Butner v. United States*, 440 U.S. 48 (1979), to support her argument that the Bankruptcy Code must bow to state law in the area of property rights. She joins a multitude in citing *Butner*'s well-known precept that in bankruptcy cases "property interests are created and defined by state law." *Id.* at 55. But like many others in that multitude, she fails to round out the precept by quoting the very next sentence in the Court's decision: "*Unless some federal interest requires a different result*, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* (emphasis added).

I do not interpret *Butner* to require application of state law property rights when the state law, here Massachusetts tenancy by the entirety law, is in conflict with the federal law, here Bankruptcy Code § 363(h)-(j). According to the Report of the Committee on the Judiciary accompanying the House of Representatives' 1978 version of the Bankruptcy Code, H.R. 8200 (the "Committee Report"):

> With respect to other co-ownership interest [sic], such as tenancies by the entirety . . . the bill does not invalidate the rights, but provides a method by which the estate may realize on the value of the debtor's interest in the property while protecting the other rights. The trustee is permitted to realize on the value of the property by being permitted to sell it without obtaining the consent or a waiver of rights by the spouse of the debtor or the co-owner, *as may be required for a complete sale under applicable state law*.

9

H.R. Rep. No. 95-595, 1st Sess., at 177 (1977) (emphasis added). The Committee Report demonstrates congressional intent to facilitate the extraction of the value of a debtor's interest in entireties property by allowing the sale of the property irrespective of state law limitations. At least one court has used § 363(h) to support its holding that while state law creates property rights, federal law can modify those rights for federal purposes. *See Hunter v. Citifinancial, Inc. (In re Hunter)*, 284 B.R. 806, 813 (Bankr. E.D. Va. 2002).

Implied preemption also applies "when compliance with both state and federal law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Good v. Altria Grp., Inc.*, 501 F.3d 29, 47 (1st Cir. 2007), *aff'd and remanded*, 555 U.S. 70 (2008) (quoting *California v. ARC Am. Corp.*, 490 U.S. 93, 100-01 (1989)). For precisely the reason set forth in *Coombs*, simultaneous compliance with Massachusetts tenancy by the entirety law and § 363(h) and (j) is impossible. Strict compliance with Massachusetts tenancy by the entirety law would require a trustee to hoard the proceeds of the sale of entireties property, possibly for years. This is contrary to the policy of the Bankruptcy Code, which encourages the prompt administration of bankruptcy estates and would force a trustee to disregard Code § 704(a)(1), which requires a trustee to close the bankruptcy case "as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704. "[T]he plain language of the statute [§ 363(j)] directs the trustee immediately to distribute proceeds after the sale." *Stine v. Diamond (In re Flynn)*, 418 F.3d 1005, 1008 (9th Cir. 2005); *see also In re Hunter*, 970 F.2d 299, 303 (7th Cir. 1992) ("And, after the trustee sells the entirety property, an appropriate portion of the proceeds is immediately given to the non-debtor spouse.")*; Aino v. Maruko (In re Maruko, Inc.)*, 200 B.R. 876, 882 (Bankr. S.D. Cal. 1996)

(concluding that "the drafters of the Bankruptcy Code intended the distribution under section 363(j) to be immediate").

These preemption and estate administration concerns underlie the ruling in *Whitman* and I find them compelling. Therefore, like the court in *Whitman*, I conclude that to the extent Massachusetts tenancy by the entirety law interferes with the application of Bankruptcy Code § 363(h) and (j), the state law is preempted. *See also Howison v. Hidler (In re Hidler)*, 192 B.R. 790, 795 (Bankr. D. Me. 1996) ("The Bankruptcy Code is preemptive federal law . . . Under § 363(h), the trustee may sell entireties property without the consent of the non-debtor spouse, regardless of state law.").

**Interests Protected**

Apart from the preemption analysis, there is another reason Ms. Green's argument is unavailing. Ms. Green conflates the balancing of the burdens analysis of § 363(h)(3) with the protection of the non-debtor co-owner's interest in § 363(j). She argues that Mr. Desmond's inability to comply with § 363(j) because he cannot distribute the sale proceeds so long as they are entireties property results, *ipso facto*, in his inability to meet the balancing of the burdens test of § 363(h)(3), thereby preventing a sale under § 363(h).

A cursory reading of § 363(j) illustrates that such a contention is contrary to the language of the statute. Section 363(j) begins by stating that its application is to take place "*after* a sale of property to which subsection (g) or (h) of this section applies." 11 U.S.C. 363(j) (emphasis added). Furthermore, § 363(h) contains no reference to § 363(j). Ms. Green's assertion that courts must consider the distribution under § 363(j) prior to allowing a sale under § 363(h) is simply not supported by the text of the statute. "[W]here … the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *U.S. v. Ron Pair Enterprises*,

11

489 U.S. 235 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917) (additional citations omitted)).

Furthermore, as previously noted, the legislative history of § 363(h) demonstrates that § 363(h) is intended as a mechanism by which the bankruptcy estate can realize the value of property held by the entirety. Thus, § 363(h) serves to further the interests of the estate. Section 363(j), on the other hand, is intended to protect the interests of the non-debtor co-owner. The Committee Report, with respect to § 363(j), notes:

> The other interest is protected under H.R. 8200 . . . by requiring the trustee to pay over to the spouse the value of the spouse's interest in the property if the trustee sells the property to someone other than the spouse.

H.R. Rep. No. 95-595, 1st Sess., at 177 (1977); *see also In re Addario*, 53 B.R. 335, 338 (Bankr. D. Mass. 1985) (noting that the non-debtor co-owner receives a right of first refusal under § 363(i) for sale of property and a lump sum payment under § 363(j) for his share of the proceeds of the sale as protection of his economic interests). In addition, the First Circuit Court of Appeals in *Whitlock v. Hause* noted, albeit in dicta, that in the context of a recovery of a conveyance of real estate that was held in tenancy by the entirety ownership prior to being transferred to the debtor's spouse, the non-debtor spouse's contribution to the purchase of that real estate was "fully protected by her status as a tenant by the entirety" because "[t]he rules governing the sale of property jointly owned by the debtor and a third party expressly provide that the trustee 'shall distribute to the debtor's spouse . . . the proceeds of such a sale . . . according to the interest of such spouse.'" 694 F.2d 861, 869 (1st Cir. 1982).  This demarcation between the parties protected by the two statutory sections further undercuts Ms. Green's attempt to make a distribution under § 363(j) a condition precedent to a sale under § 363(h).

**Conclusion and Order**

Mr. Desmond should be given the opportunity to establish at a trial the third element of § 363(h) and if he can, to sell the Newton condominium. Then, to the extent Massachusetts tenancy by the entirety law impedes his ability to distribute the sale proceeds pursuant to § 363(j), the state law will be deemed preempted.[4]  Ms Green's motion for summary judgment is, therefore, DENIED.

So ordered.

Dated at Boston, Massachusetts this 11th day of October, 2018.

By the Court,

_/s/ Melvin S. Hoffman_

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:    Anthony R. Leone, Esq.
Thomas S. Vangel, Esq.
Murtha Cullina LLP
Boston, Massachusetts
  For the Plaintiff, John O. Desmond, Trustee

John F. Sommerstein, Esq.
The Law Offices of John F. Sommerstein
Boston, Massachusetts
  For the Defendant, Marsha S. Green

---

[4] Given such preemption, it is not necessary for me to address Mr. Desmond's alternative arguments that the existence of joint debts and the debtor's payment of "necessaries" provide separate and independent bases for him to sell the Newton condominium. In addition, at this stage, I need not determine the appropriate formula for dividing any sale proceeds between the bankruptcy estate and Ms. Green except to note that a 50-50 distribution appears to offer one reasonable approach. *See In re Bradigan*, 501 B.R. 151 (Bankr. W.D.N.Y. 2013).